**United States District Court**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CLIFFORD MICHEL, <br> and GUERDA LOUIS, | § <br> § <br> § | |
| Individually and on Behalf of Others <br> Similarly Situated, | § <br> § <br> § | |
| *Plaintiffs*, | § <br> § <br> § | Civil Action 1:21-cv-681 |
| vs. | § <br> § | **JURY DEMANDED** |
| WORKRISE TECHNOLOGIES INC., <br> HCS RENEWABLE ENERGY LLC, and <br> ROBERT BURNS, | § <br> § <br> § <br> § <br> § | |
| *Defendants*. | § <br> § | |

**PLAINTIFFS' ORIGINAL**
**COMPLAINT AND JURY DEMAND**

Plaintiffs Clifford Michel and Guerda Louis ("Plaintiffs") present their Original

Complaint for unlawful discrimination, hostile work environment, and retaliation in

violation of 42 U.S.C. § 1981 ("Section 1981").

## I.    NATURE OF THIS ACTION

1.    In May 2020, Defendants Workrise Technologies Inc., (formerly RigUp,

Inc.) ("Workrise") and HCS Renewable Energy, LLC ("HCS") terminated

approximately fifty (50) Black or Caribbean solar panel module installers and

technicians working in their install sites in Texas because of their race, color, national

origin, and in retaliation for their opposition to illegal discrimination.

2.    Chris Franco, a Construction Manager with Defendants Workrise and

HCS, admitted that he was instructed by a Vice President, Defendant Robert Burns,

to terminate all Black and Caribbean (predominantly Haitian and Jamaican) employees working for Defendants.

3. Defendants falsely told the employees they were being terminated because of a "Reduction of Man Force."

4. In reality, these employees were terminated because of their skin color, race, heritage, and birthplace.

5. As a result, Plaintiffs, who worked for Defendants Workrise and HCS bring this action to redress race, ethnic, and color discrimination and retaliation for opposing unlawful discrimination in violation of 42 U.S.C. § 1981 ("Section 1981").

6. Plaintiffs also bring this action against Defendants on behalf of themselves and all employees and ex-employees of Defendants who are Black or Caribbean or Haitian or Jamaican who were retaliated against for opposing unlawful discrimination and unlawfully terminated in May 2020 by Defendants (referred to as "Plaintiffs Class" or "the Class Claims" or simply "the class").

7. Plaintiffs seek to represent all Black or Caribbean employees of Defendants who have been subjected to one or more aspects of the systemic race and ethnic discrimination and retaliation described in this Complaint, including, but not limited to: discriminatory policies and practices; differential treatment; retaliation for opposing unlawful discrimination; and unlawful termination.

8. Plaintiffs seek, on behalf of themselves and the class, declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses.

## II.     JURISDICTION AND VENUE

9.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

10.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants Workrise and HCS are subject to personal jurisdiction, reside in Texas, and maintain their principal place of business, in Austin, Texas, and within this District.

11.     The Western District of Texas is the most logical forum in which to litigate the claims of the Plaintiffs and class. The Class worked at Defendants' Workrise and HCS facility in Tom Green County. Furthermore, while Plaintiffs reside outside of Texas, some potential class members, reside in all areas of the Western District of Texas.

12.      On May 20, 2020, Michel filed charges of discrimination, retaliation and hostile work environment with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e *et seq.*[1]

## III.     PARTIES

### A.     Class Representatives

13.     Plaintiff Clifford Michel is a citizen of the United States and a resident of New York.

14.     Michel is a Black, Caribbean Haitian male.

---

[1] Plaintiffs will amend their Complaint to add these causes of actions once the EEOC provides a right to sue letter.

15.     Michel was born in Haiti and immigrated to the United States in 2009.

16.     At all times material, Michel was employed by Defendants Workrise and HCS as a Module Installer, QA/QC Technician.

17.     Plaintiff Guerda Louis is a citizen of the United States and a resident of Florida.

18.     Louis is a Black, Caribbean Haitian female.

19.     At all times material, Louis was employed by Defendants Workrise and HCS as a QA/QC Technician.

**B. Plaintiffs Class**

20.     Plaintiffs' Class are a mix of current and former Black or Caribbean employees of Defendants who have suffered discrimination and retaliation as described in this Complaint.

**C.     Defendants**

21.     Workrise is a foreign corporation and does business in the state of Texas. Workrise may be served by serving its registered agent, Cogency Global Inc., at its registered address, 1601 Elm St., Suite 4360, Dallas, Texas 75201.

22.     HCS is a domestic limited liability company and may be served by serving its registered agent, Cogency Global Inc., at its registered address, 1601 Elm St., Suite 4360, Dallas, Texas 75201.

23.     Workrise is a workforce management solution for the skilled trades.

24. HCS shares a website with Workrise that states "HCS Renewable is now Workrise." However, it is registered as a separate entity with the Texas Secretary of State.

25. At all times material, Defendant Workrise is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of Texas with Texas Taxpayer ID 32053814961 and Texas Secretary of State ID 0801973532.

26. Workrise has been in business since April 17, 2014.

27. At all times material, Defendant HCS is a domestic business corporation duly existing by the virtue and laws of the State of Texas that does business in the State of Texas with a Texas Taxpayer ID 32061439264 and Texas Secretary of State ID 0802531453.

28. HCS has been in business since August 30, 2016.

29. At all times material, Workrise owns and operates HCS.

30. At all times material, Defendants Workrise and HCS were joint employers of Plaintiffs.

31. At all times material, Defendants Workrise and HCS acted in concert such that they were a "single employer" or a "joint employer" under all applicable federal, state, and local laws.

32. At all times material, Defendants Workrise and HCS employed members of Plaintiffs' Class as Module Installers and QA/QC Technicians.

33.     At all times material, Defendant Robert Burns ("BURNS") was the Vice President of Construction for Defendant HCS.

34.     BURNS is a white male of non-Caribbean ancestry.

35.     BURNS held supervisory authority over Plaintiffs and the class, controlling many of their job duties.

36.     BURNS held the power to hire and fire Plaintiffs and the class.

37.     At all times material, Chris Franco was the Construction Manager for Defendants Workrise and HCS.

38.     Chris Franco is a Hispanic male of non-Caribbean ancestry.

39.     Franco held supervisory authority over Plaintiffs and the class, controlling many of their job duties.

40.     Franco held the power to hire and fire Plaintiffs and the class.

41.     BURNS, Workrise, and HCS are collectively referred to as "Defendants" or "Defendant").

## IV.  BACKGROUND FACTS

   *a.  Defendants Hire Plaintiffs to Work in Texas in February 2020*

42.     In 2019, Michel's friend recommend that he seek work installing solar panels.

43.     Defendants hired Michel on or about February 1, 2020, as a Module Installer to work in San Angelo, Texas on the Rambler Solar Project.

44.     The Rambler Solar Project covers 1,700 acres with 733,000 solar panels.

45.     After he was hired, Michel travelled from his home in New York to work for Defendants in Texas.

46.     Defendants hired Louis on or about November 14, 2019, as a Module Installer to work in San Angelo, Texas.

47.     After she was hired, Louis travelled from her home in Florida to work for Defendants in Texas.

48.     Defendant hired the majority of the class in or around early 2020.

49.     Defendants hired Plaintiffs through an in-house recruiter named Jean Jamesly Brisseau ("Brisseau").

50.     Brisseau is the Administrator and Site Representative for HCS, for Defendants' worksite in San Angelo, Texas.

### b. *Plaintiffs Face Discriminatory Treatment*

51.     Plaintiffs initially worked under the supervision of Foreman Philip.

52.     Foreman Philip made discriminatory comments on a regular basis like "these fucking Haitians" and "these people are stupid," in reference to workers who were Black, Caribbean, Jamaican, and Haitian like Plaintiffs and the class.

53.     Foreman Philip made these comments in front of Michel.

54.     Foreman Philip spoke to workers who were Black, Caribbean, Jamaican, and Haitian, like Plaintiffs and the class, in a derogatory and aggressive manner on a regular basis.

55.     Foreman Philip made these comments in front of Michel.

56.     Foreman Philip also regularly terminated members of the class and drove others away because they feared Foreman Philip would become physically violent.

57.     Plaintiffs and members of the Class complained about this unlawful hostile work environment, but Defendants took no appropriate corrective action.

58.     On or about January 29, 2020, Plaintiffs and members of the class went on strike and demanded that Foreman Philips be fired due to his discriminatory and abusive behavior.

59.     Defendants claimed they terminated Foreman Philips. But he was brought back as the foreman about a week later only to be allegedly fired a second time by Defendants.

  c.  *Plaintiffs are Fired for Unlawful reasons in May 2020*

60.     In or around early April 2020, Defendants brought in Chris Franco as a foreman, who is Hispanic and of Mexican ancestry.

61.     Franco brought with him approximately 50 Mexican workers.

62.     On or about the end of April 2020, Defendants shut-down the worksite for COVID testing.

63.     On May 11, 2020, Michel emailed and called Defendants to ask why he had not been called back to the Rambler Site despite testing negative for COVID and hearing that the site reopened. Michel received no substantive answer.

64. On May 12, 2020, about four days after the testing results, Defendants called back most White and Hispanic workers while "laying off" the Haitian, Jamaican and African American and Black workers.

65. On or about May 12, 2020, Michel received a text message from Franco stating:

> Hello this is Chris Franco from HCS, I was instructed to contact you to let you know you have been laid off. Please do not return back to the Rambler Site and contact your recruiter for any questions. Reason why: Reduction of man force. Thank you, Chris Franco.

66. Michel asked Defendants' employee and his recruiter Brisseau, "Why am I being terminated?"

67. Brisseau responded to Michel:

> FRANCO WAS INSTRUCTED BY BURNS TO FIRE ALL OF THE CARIBBEAN AND BLACK PEOPLE AT ALL THE SITES. BECAUSE IT CAME FROM HIGHER UP, THERE IS NOTHING HE COULD DO SO HE HAD TO FIRE YOU.

68. Michel learned that Defendants also terminated approximately 50 other Black, Caribbean, Jamaican, or Haitian employees (including Louis) at or around the same time because of their color, Caribbean race, and Jamaican or Haitian national origin.

69. Defendants' reduction in force and terminating all Caribbean, Haitian, and Black workers is a pretext for discrimination on the basis of Plaintiffs' and the class' color, race, and ancestry, and in retaliation for Plaintiffs' and the class' complaints of illegal discrimination and a hostile work environment.

70.     Defendants retained employees who were not members of Plaintiffs' and the class's protected group.

71.     Plaintiffs' last day at work was May 12, 2020.

72.     On May 13, 2020, Michel emailed Defendants to complain that his termination was discriminatory since only white and Hispanic workers were allowed back to work while the Black, Haitian and other Caribbean workers were not.

73.     On May 14, 2020, Michel again emailed Defendants, including Mr. Franco and Mr. Brisseau, and two other recruiters, to state that he had hired an attorney given the discriminatory firings of over 50 Haitian and Black employees.

74.     On May 15, 2020, an employee from Defendants' Human Resources Department emailed Michel to notify him that they would investigate his complaint.

75.     A few hours later that same day, Defendant BURNS sent Michel a LinkedIn connection request to stop a potential lawsuit and avoid liability by attempting to befriend Michel.

76.     On or around May 18, 2020, an employment attorney that Michel retained called Defendants about the discriminatory firings.

77.     On May 20, 2020, Michel's attorney wrote Defendants about the discriminatory firing and provided an EEOC charge to be filed against Defendants.

78.     As a result of Michel's May 13 complaint and retaining an attorney, about two weeks after the firing, BURNS contacted Brisseau, the recruiter, and told him to rehire the 50 Black and Caribbean employees that were just fired from the Rambler Solar Project in San Angelo.

79.     By late May and early June 2021, Defendants were attempting to rehire the Black and Caribbean employees.

80.     By this time, Michel had returned to his home in New York.

81.     Louis never received any notice that she was being rehired despite testing negative for COVID.

82.     Approximately fifteen (15) class members returned to work for Defendants, mostly those who lived in Texas, while the other approximately thirty-five (35), including Plaintiffs, did not return because the work environment was discriminatory and hostile.

83.     In late July 2020, the Rambler Solar Project went online and began producing electricity.

*d. The Reasons for Plaintiffs' Termination was Pretextual*

84.     In or around March 2020, Defendants laid off over 100 employees due to the COVID-19 pandemic as well as falling oil prices. Those employees were in-house administrative and account executive employees. Defendants continued to hire for Module Installers and QA/QC Technicians well after the oil and COVID related layoffs.

85.     Furthermore, according to CEO Ying Xuan Yong, Defendants terminated certain employees because "the economic hit in oil and gas [and] … the impacts of the COVID-19 outbreak." Plaintiffs and the class were engaged in a trade that is entirely different and in a completely different energy sector – solar power.

86.     Plaintiffs and, upon information and belief, class members were also tested for COVID-19 and found to be negative.

87.     All or substantially all employees outside of Plaintiffs' and the class's protected group maintained their employment with Defendants.

88.     Defendants discriminated against and terminated Plaintiffs and the class because they complained of the unlawful conduct of Defendants related to the above protected classes.

89.     As a result of Defendants' discriminatory and intolerable treatment, Plaintiffs suffered and continue to suffer emotional distress, humiliation, embarrassment, and physical ailments including trouble eating, trouble sleeping, and extreme emotional distress.

90.     As a result of Defendants' unlawful and discriminatory actions, Plaintiffs have endured unwarranted financial hardships and irreparable damage to their professional reputation.

91.     As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensation.

92.     Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

93.     Plaintiffs further claim aggravation, activation, or exacerbation of any preexisting condition.

94.     As Defendants' conduct has been malicious, willful, and outrageous, Plaintiffs demand Punitive Damages against all Defendants, jointly and severally.

95.     Plaintiffs claim alternatively (in the event Defendants claim that Plaintiffs are Independent Contractors), Plaintiffs make all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

## V.     CLASS ACTION ALLEGATIONS

### A. Class Definition

96.     Plaintiffs seek to maintain claims on their own and on behalf of a class of current and former employees of Defendants. Each Plaintiff is a member of a class.

97.     One class consists of all Black or Caribbean or Haitian or Jamaican individuals who are, or have been, employed by Defendants and were terminated in or around May 2020 on the basis of color, race or ethnicity (the "discrimination class"). Michel and Louis are representatives of this class. Upon information and belief, there are approximately fifty (50) members of the proposed class.

98.     Another class consists of persons who have opposed or reported racial discrimination by Defendants and have experienced retaliation (the "retaliation class"). Michel and Louis are representatives of the class. Upon information and belief, there are 50 members of the proposed class.

## B. Efficiency of Class Prosecution of Common Claim

99.     Certifying a class of employees similarly situated to Plaintiffs is the most efficient and economical means of resolving the questions of law and fact which are common to the Plaintiffs' claims and the proposed class.

100.    Plaintiffs' individual claims require resolving the common question of whether Defendants have engaged in a pattern or practice of race discrimination against Black Caribbean employees or of retaliation for reporting or opposing race discrimination.

101.    The Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, careers and working conditions and for the proposed class members. in the lives, careers and working conditions of the proposed class members. The Class Representatives have standing to seek such relief because of the adverse effect that such discrimination has had on them individually, and on Black Caribbean individuals and those who opposed or reported racial discrimination, generally.

102.    To gain such relief for themselves and the class, Plaintiffs will first establish the existence of systemic racial discrimination and retaliation as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in many individual lawsuits risking inconsistent adjudications. Certifying the proposed class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve the questions for Plaintiffs, the class, and Defendants.

103. Plaintiffs' and the class claims are premised upon the traditional bifurcated method of proof and systemic disparate treatment claims of the type at issue in this case. A bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### C. Numerosity and Impracticality of Joinder

104. The class Plaintiffs seek to represent is too numerous to make joinder practicable. The proposed class consists of approximately fifty (50) current and former Black and Caribbean employees who Defendants terminated in May 2020, and those who opposed race discrimination during the liability period.

### D. Common Questions of Law and Fact

105. There are questions of law and fact common to the proposed class which predominate over any questions affecting only individual class members, including, inter alia:

  a. whether Defendants engaged in unlawful, systemic race discrimination and retaliation in its policies, practices or procedures, and in the general terms and conditions of employment, including, but not limited to, unlawful termination;

  b. whether Defendants are liable for a continuing systemic violation of Section 1981; and,

  c. determining the proper standards for proving a pattern or practice of discrimination or retaliation by Defendants against its Black and

Caribbean employees or those who oppose or report racial discrimination.

106.    The employment policies, practices and procedures to which Plaintiffs and the class are subject are set at Defendants' corporate level and apply universally to all class members in Texas at the Rambler Site.

107.    Throughout the liability period, a disproportionately large percentage of the managers and supervisors at Defendants have not been Black or Caribbean or those who oppose race discrimination.

### E. Typicality of Claims and Relief Sought

108.    Plaintiffs' claims are typical of the claims of the proposed class. Plaintiffs assert claims in each of the categories of claims they asserted on behalf of the proposed classes. The relief sought by Plaintiffs for race discrimination or those who opposed racial discrimination is also typical of the relief sought on behalf of the proposed classes.

109.    Plaintiffs are, like the members of the proposed classes, both employees who worked for Defendants during the liability period and been terminated in or around May 2020 and retaliated against as a result of Defendants' systemic pattern or practice of discriminatory behavior toward employees who are Black or from the Caribbean.

110.    The relief necessary to remedy Plaintiffs' claims is the same as that necessary to remedy the claims of the proposed class members, including (a)

declaratory relief; (b) injunctive relief; (c) monetary damages in the form of back pay, front pay and emotional distress damages.

### F.   Adequacy of Representation

111.   Plaintiffs' interests are co-extensive with those of the proposed class they seek to represent. Plaintiffs seek to remedy Defendants' discriminatory and retaliatory employment policies, practices and procedures and will not be subjected to racial hostility at work. Plaintiffs are willing and able to represent the proposed class fairly and vigorously as they pursue their similar individual claims.

112.   Plaintiffs retained counsel who are qualified, experienced, and able to conduct a litigation of this size and complexity. The combined interests, experience, and resources Plaintiffs and their counsel clearly satisfy the adequacy of representation requirement of Rule 23(a)(4).

## VI.   CLASS CLAIMS

113.   Plaintiffs and the class have been subjected to a systemic pattern and practice of race discrimination or retaliation.

114.   Defendants' employment policies, practices, and procedures: (a) penalize employees for exercising the rights afforded to them by Section 1981; (b) subject Black and Caribbean employees to racial hostility in the work environment; and (c) selectively terminate the employment of Black and Caribbean employees.

115.   Because of Defendants' systemic pattern and practice of racial discrimination, Plaintiffs and the class have been adversely affected, including the loss of compensation, wages, back pay, and employment benefits.

116. Plaintiffs and the class have been subjected to racial hostility or retaliation at work, both severe and pervasive, which affects the terms and conditions of their employment. Defendants' actions and inactions encourage this behavior by its non-Caribbean employees.

117. Plaintiffs and the class have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. Plaintiffs and the class are now suffering irreparable injury from Defendants' unlawful policies, practices and procedures as set forth herein, and will continue to suffer unless those policies, practices and procedures are enjoined by this Court.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Section 1981)

118. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

119. Plaintiffs allege that Defendants discriminated against them and the discrimination class by treating them differently from and less preferably than similarly situated non-Black and non-Caribbean employees and subjecting them to disparate terms and conditions of employment, termination, and other forms of discrimination.

120. Defendants' conduct has been disparate, intentional, willful and conducted in callous disregard of the rights of Plaintiffs and the class.

121. By reason of the above, the Plaintiffs and the class are entitled to all legal and equitable remedies available under Section 1981.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Section 1981)

122.   Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

123.   Plaintiffs allege that Defendants retaliated against them and the retaliation class by treating them differently from and less preferably than similarly situated employees who did not complain about discrimination in violation of Section 1981.

124.   Defendants' conduct has been disparate, intentional, willful and conducted in callous disregard of the rights of Plaintiffs and the retaliation class.

125.   By reason of the above, Plaintiffs and the class are entitled to all legal and equitable remedies available under Section 1981.

## THIRD CAUSE OF ACTION
### (Hostile Work Environment in violation of Section 1981)

126.   Plaintiffs repeat and reallege each allegation in each numbered paragraph above.

127.   By adversely affecting the terms, conditions and privileges of Plaintiffs and the class' employment, Defendants subjected them to a hostile work environment in violation of Section 1981.

128.   Due to Plaintiffs and the class' race, ancestry, and national origin, Defendants continuously subjected them to harassment which had the effect of unreasonably interfering with their work and created an intimidating, hostile or offensive work environment that seriously affected their psychological well-being.

# JURY DEMAND

129.    Plaintiffs request a trial by jury to the extent allowed by law.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the class whom they seek to represent, request the following relief:

A. Certification of the case as a class action under Rule 23(a), (b)(2) or (b)(3), on behalf of the proposed Class Representatives, and designation of the Class Representatives as representatives of the classes and their counsel of record as class counsel;

B. Declaratory judgment that Defendants' employment policies, practices or procedures challenged herein are illegal and violate Section 1981;

C. A permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, race discrimination by Defendants as set forth herein;

D. An Order requiring Defendants implement programs that (i) will provide equal employment opportunities for Black Caribbean employees; (ii) will remedy the effects of the Defendants' past and present unlawful employment policies, practices or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described.

E. An Order requiring Defendants to implement systems of assigning, training, transferring, compensating, and promoting Black Caribbean employees in a non-discriminatory manner;

F. An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (B) through (E) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (B) through (E), above;

G. An Order placing or restoring Plaintiffs and the class into those jobs they would now be occupying, but for Defendants' discriminatory policies, practices or procedures;

H. An Order directing Defendants to adjust the wage rates and benefits for Plaintiffs and the class to the level that they would be enjoying but for the Defendants' discriminatory policies, practices or procedures;

I. An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Plaintiffs and the class to be determined at trial;

J. Any other appropriate equitable relief to Plaintiffs and the class;

K. An award of compensatory, nominal and punitive damages to Named Plaintiffs;

L. An award of litigation costs and expenses, including reasonable attorneys' fees, to Plaintiffs and the class;

M. Pre-judgment interest;

N. Such other and further relief as the Court may deem just and proper; and

O. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Dated: August 3, 2021

Respectfully submitted,

*/s/ Brian Sanford*
Brian Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph: (214) 717-6653
Fax: (214) 919-0113

**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiffs
30 Wall Street, 8th Floor
New York, NY 10005
(212) 232-0155

**ATTORNEYS FOR PLAINTIFFS**