UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| CLIFFORD MICHEL And GUERDA LOUIS,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WORKRISE TECHNOLOGIES INC., LLC and HCS RENEWABLE ENERGY LLC<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§ Civil Action 1:21-cv-00681<br>§<br>§<br>§ **JURY DEMANDED**<br>§<br>§<br>§ |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

TO THE HONORABLE LEE YEAKEL:

Plaintiffs Clifford Michel and Guerda Louis move to compel Defendants WORKRISE TECHNOLOGIES INC., LLC ("Workrise") and HCS RENEWABLE ENERGY LLC ("HCS") to (i) overrule objections to interrogatories and requests for production, and (ii) compel removal of redactions from Defendants' production of the EEOC filing.

### BACKGROUND FACTS

**The Claims**

The Plaintiffs Clifford Michel and Guerda Louis are both Black Haitians. Plaintiffs worked for Defendants Workrise and HCS installing solar panels in solar fields. In May 2020, Defendants terminated Plaintiffs and approximately 50 Black and Caribbean solar panel module installers and technicians working in their install sites in Texas.

On August 3, 2021, Plaintiffs then filed this suit against Defendants to redress race, ethnic, and color discrimination in violation of Section 1981 and Title VI on behalf of themselves and a putative class of the other 48 black employees fired at the same time by Defendants.

**The Discovery**

On March 18, 2022, Plaintiffs served interrogatories and requests for production on Defendants. The responses were originally due on April 18 and Defendants requested three extensions of time to respond that Plaintiffs granted. On May 16, 2022, Defendants served their responses and objections and only produced Plaintiffs' personnel files totaling 34 pages while promising to provide other documents at an unspecified future time. (**Ex. 1**; **Ex. 2**.)

On June 5, 2022, Plaintiffs wrote about deficiency and asked to meet and confer. Following a series of emails through June and July, the parties continued to confer by phone into September and October to resolve deficiencies to no avail.

Plaintiffs' counsel has diligently and repeatedly attempted to resolve issues related to the requests since Defendants initially responded on May 16, 2022 and provided a small amount of supplemental documents on November 23, 2022 including EEOC file and HCS's "Employee Safety Manual" – none of which were responsive to any document request.

<u>**DISCOVERY DISPUTE**</u>

**I.   PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**Interrogatories No. 1 and No. 2** both seek information about other black employees that Plaintiffs agree to limit No.1 and No. 2 to the time period of Plaintiffs' employment from November 1, 2019 to July 1, 2020. (**Ex. 1**.) Given Plaintiffs' allegation that Defendants fired all approximately 50 black employees on or around May 2020, the identities of black employees and their contact information as potential witnesses is extremely relevant. (Am. Compl. ¶ 1.)

Defendants have no basis to withhold this information. Since it is Defendants' position that they did not fire all black employees in May 2020, the alleged black employees who were **not** fired are potential witnesses that support their defense.

As the Fifth Circuit explained in following the U.S. Supreme Court, a "plaintiff may introduce in an individual disparate treatment case statistics evidencing an employer's pattern and practice of discriminatory conduct, which 'may be helpful to a determination of whether' the alleged discriminatory act against the plaintiff 'conformed to a general pattern of discrimination against' members of a protected group."[1]

U.S. Supreme Court precedent entitles Plaintiffs to discovery to support their claim with Defendants' pattern or statistics of firing black and non-black employees in or around May 2020.

Defendants' mention of the class certification motions reveals that their real reason for not producing the information is to prevent more plaintiffs from joining the case. But that is not a basis to hide the names of potential witnesses in the present two-plaintiff case. Even in a two-plaintiff case at trial, it would support Plaintiffs' wrongly termination discrimination claims if other black employees testified as "me too" witnesses that they were also fired.

No *per se* rule exists excluding evidence of evidence of discrimination against other employees, and the question of whether evidence of discrimination by other supervisors is relevant in an individual plaintiff case "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."[2] Prior acts of discrimination are "quite probative" of the question whether current conduct is discriminatory.[3] It may show intent under FRE 404(b); provide information about Defendants' treatment of other persons of color; and may show Defendants' awareness of discrimination in the workplace.[4]

---

[1] *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973)); *Lieberman v. Gant*, 630 F.2d 60, 68 (2d Cir. 1980) ("Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case."); *Vann v. Mattress Firm*, 2014 WL 1365943, at *3 (S.D. Tex. Apr. 7, 2014) ("the general pattern and practice of an employer can be used to show discrimination in a disparate treatment case").
[2] *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).
[3] *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1267 (10th Cir. 1988).
[4] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999).

"Me too" evidence is probative of intent or motive to discriminate and is admissible at trial.[5] Courts permit plaintiffs to discover (and admit) sufficiently probative varieties of "me too" evidence in employment discrimination cases and evidence of an employer's treatment of other employees, as well as an employer's overall employment practices and policies.[6]

"Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices," and although such evidence may be excludable in other kinds of cases, "in discrimination cases, such background evidence may be critical for a jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive."[7] This is just as true in an individual case as in a pattern or practice case.[8]

Plaintiffs seeks specific information regarding other employees who were similarly treated. These employees are similarly situated to Plaintiffs and this information is discoverable to show if Defendants discriminated against others similarly situated, which would confirm that "other incidents" like how Defendants treated Plaintiffs occurred or did not occur. Courts in this District have compelled such discovery.[9]

---

[5] *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774-75 (5th Cir. 2009) (holding District Court did not err in allowing non-party employees to testify about the employer's alleged sex discrimination against them); *Hitt v. Connell*, 301 F.3d 240, 249-50 (5th Cir. 2002) (holding District Court did not err in allowing non-party employees to testify about employer's discrimination and retaliation against them because such testimony was relevant to the plaintiff proving the employer's motive in discharging him); *Cox v. Donahoe,* 2017 WL 10221620, at *1 (E.D. Tex. Apr. 9, 2017).
[6] *Bryan v. Dean Foods Co.*, 2002 WL 31641628 (N.D. Ill. Nov. 23, 2002) (employer required to produce information regarding employee complaints of disability discrimination against employer from facilities over which decision maker had authority); *Shannon v. NYC Transit Authority*, 2001 WL 286727 (S.D.N.Y. Mar. 22, 2001); *Southwest Hide Co. v. Goldston*, 127 F.R.D. 481, 484 (N.D. Tex. 1989).
[7] *Glass v. Philadelphia Electric Co.*, 34 F.3d 188, 195 (3d Cir. 1994).
[8] *Burns v. Thiokol Chem. Corp*., 483 F.2d 300, 306 (5th Cir. 1973) ("past history of both black and white employees is surely relevant information" and "is therefore discoverable").
[9] *Vann*, 2014 WL 1365943, at *3 (compelling interrogatory response to identify other non-party employees who were also transferred like plaintiff by same supervisors).

Finally, Defendants' claim that they cannot provide non-party names due to privacy concerns lacks merit. Courts routinely require production of non-party names subject to a protective or confidentiality order.[10]

**Interrogatory No. 3** seeks information about prior complaints of discrimination against Defendant for the last 10 years. To compromise, Plaintiffs agree to limit this request to race or national origin discrimination.

Defendants' relevancy objection is misplaced. This interrogatory seeks highly relevant information about "me too" witnesses who faced similar discrimination working for Defendants. Such people are potential trial witnesses in supporting an inference of discrimination to show that Defendants have a habit or pattern of racial or national origin discrimination.

Defendants' objection to the term "formal or informal complaint" is a disfavored hyper-technical reading designed to obstruct. They are not "vague." Defendants have an obligation to read interrogatories in a common-sense manner.[11]

**Interrogatory No. 6** seeks the net worth of HCS.

Defendants' net worth is relevant to Plaintiffs' demand for punitive damages.[12]

---

[10] *Id.* at *5 ("Mattress Firm's concerns about protecting employee privacy can be dealt with through a protective order limiting the use and disclosure of this information."); *Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) ("Walgreen's concerns about protecting employee privacy can be dealt with through a confidentiality agreement limiting their use and disclosure.").

[11] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) ("the responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories").

[12] (Am. Compl. ¶ E, p. 21: "An award of compensatory, nominal and punitive damages . . ."). "Likewise, district courts in this circuit have found that evidence of net worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damage claim." *Smith v. DeTar Hosp. LLC*, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011); *Regions Ins., Inc. v. Alliant Ins. Services, Inc.*, 2015 WL 1886852, at *5 (S.D. Miss. Apr. 24, 2015) (collecting cases) ("A review of the rulings by magistrate judges and district judges throughout the Fifth Circuit reveals that the majority of those opinions allow net worth discovery during the discovery period.").

**II. PLAINTIFFS' FIRST REQUEST FOR PRODUCTION:**

In response to Plaintiffs' 30 document requests, Defendants' production is highly deficient. (**Ex. 2**.) As an initial response, Defendants only produced Plaintiffs' personnel files totaling 34 pages produced on May 16, 2022. Months passed with no documents produced.

On November 23, 2022, Defendants produced the EEOC file and HCS's Employee Safety Manual. Nothing has been produced since – despite Defendants' claim of a "rolling production" after multiple phone call and email conferrals.

Defendants obviously will not engage in any meaningful discovery without Court intervention despite their "obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests."[13]

1. **General Errors with Defendants' Objections**

Defendants' document request responses suffers from two general errors. First, Defendants assert objections but do not state if they are withholding any documents based on those objections as Rule 34 requires.[14]

Second, Defendants claim they will produce documents in the future but do not provide a date for when the production will occur. This violates Rule 34(b)(2)(B) ("The production must then be completed no later than the time for inspection specified in the request or <u>another reasonable time specified in the response</u>.") (emphasis added).[15]

---

[13] *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990).
[14] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 578 (N.D. Tex. 2018).
[15] Fed. R. Civ. P. 34, 2015 Amendment Advisory Committee Notes ("When it is necessary to make the production in stages the response should specify the beginning and end dates of the production."); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017).

As a result and to avoid more delay, the Court should direct Defendants to withdraw the objections or specify whether documents are being withheld and, in the future, direct compliance with providing a specific date for any rolling productions as required by Rule 34.

### 2. Employment Policies & Manuals – Doc. Request Nos. 1-7, 15-16

Despite promising to provide these documents, Defendants have only produced the HCS Employee Safety Manual that only applies to physical safety and OHSA regulations, not anti-discrimination or human resource policies that would be relevant in this case. Plaintiffs, to avoid dispute, agree to the time limitation of one year before Plaintiffs' terminations.

The human resource training materials are relevant to show what steps Defendants took to prevent discriminatory terminations and foreseeability, since many such materials include statistics about the occurrence of discrimination in the workplace.

The retention policy request in Doc. Request No. 4 is particularly relevant now that we learned Defendants did not implement a litigation hold until a year after Plaintiffs filed an EEOC charge.[16] Accordingly, the Court should compel that these documents be produced within 14 days to prevent delays in starting depositions.

### 3. Prior Discrimination Complaints – Doc. Request Nos. 7-8

To lessen the dispute, Plaintiffs withdraw the request for retaliation information since that claim is no longer part of the case and limit the request to race and national origin discrimination. Otherwise, as discussed above in the interrogatory section, prior complaints and lawsuits involving discrimination are highly relevant and discoverable.

---

[16] *Castaneda v. AT&T Corp.*, 2018 WL 11471270, at *6 (W.D. Tex. Nov. 8, 2018) ("Plaintiff's EEOC charge of discrimination provided AT&T with sufficient notice to anticipate litigation.").

Contrary to Defendants' temporal objection, five years is not burdensome. Defendants make no showing with any specificity about why it is burdensome to produce five years of records other than boiler-plate objections.[17]

### 4. Employee Racial Statistics – Doc. Request Nos. 9, 20

The racial compensation of Defendants' workforce is relevant to the central claim that all black employees were terminated. The request is also relevant to show the disparity of minority or black employees holding managerial positions for Defendants. As sought in No. 20, studies or proposals to remedy past and current discrimination at Defendants would be highly relevant to showing that for Plaintiffs discrimination was a motivating factor in their terminations.

Notably, Defendants never produced the EEO-1 report as promised – and they should be produced for the last five years, not one year.

Next, Defendants' assertion of attorney-client privilege is improper because no privilege log has been provided and the assertion is conclusory.[18]

### 5. Job Description – Doc. Request No. 10

Despite their lengthy objections, Defendants agreed to produce these documents and have not. The Court should compel their production.

### 6. Comparator & Witness Information of Firings – Doc. Request Nos. 11-13, 24, 26

These are critical and relevant document requests that go to the heart of Plaintiffs' claims that they and all other black employees were terminated in May 2020 unlike the non-black employees. The discovery is permitted by *Plemer*.

---

[17] *McLeod*, 894 F.2d at 1484-86 (objecting to requests as "overly broad, burdensome, oppressive and irrelevant" is inadequate); *Enron Corp. Sav. Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) ("[B]oilerplate objections are not acceptable").
[18] *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

In Request No. 11, the identity of all Installers is necessary as black and non-black employees or former employees are potential witnesses about Defendants termination or "reduction in force" actions in May 2020.

To lessen disputes, Plaintiffs will limit Nos. 11-13 to the period during Plaintiffs employment until August 2020 in order to determine who was re-hired by Defendants.

In Request No. 12, as discussed in the interrogatory section, seeks the identities of highly relevant black employees to determine other black employees that can corroborate the main claim that Plaintiffs and all other black employees were fired *en masse*.

In Request No. 13, Defendants promised they would provide information about what they call a "reduction in force." They have not done that. Responding to a discovery demand with no date certain for the production violates Rule 34 (b)(2)(B).[19]

For Request 26, while Defendants offered to provide termination forms for just Plaintiffs, Defendants confuse the issues by focusing on the class-wide claims being initially dismissed before Plaintiffs amended the complaint. But Plaintiffs are entitled to termination documents for all installers since their main allegation is that they and all other black employees were fired.

Whether this is a class action or two-plaintiff case has no bearing on the relevancy of discovery about who was fired during the May 2020 time period and Plaintiffs entitlement to documents proving their allegations that there was a *de facto* policy of firing all black employees.[20]

### 7. Corporate Structure Documents – Doc. Request No. 17

Plaintiffs' will limit this request to the state of Texas during the period 2018 to 2020. The request is relevant given Defendants' claim that Plaintiffs were not employed by Workrise, only HCS. Moreover, the request for corporate structure and organizational charts is necessary to

---

[19] *Fischer*, 2017 WL 773694, at *3.
[20] *Plemer,* 713 F.2d at 1135; *Lieberman*, 630 F.2d at 68.

determine how decision making was made by Defendants and the amount of authority that was held by each supervisor or corporate officer as it relates to Plaintiffs' termination claims.

8. **Hiring Practices – Doc. Request No. 21-23**

Despite agreeing to produce documents for the Rambler Site hiring in 2020, Defendants have not produced these documents. We do not agree to the 2020 timeframe. Plaintiffs, as a compromise, limit the timeframe to 2018 to 2020 and will remove the request for promotional documents. The request is relevant to determine how Defendants recruited black employees and whether they had any rules or policies in recruiting that would tend to show that this workforce was considered expendable. That would support an inference of discrimination for the mass firing.

9. **General Document Requests – Doc. Request Nos. 28-29**

Despite their agreement to produce these documents, Defendants have not. The Court should compel their production. Moreover, the sheer number of times Defendants agreed to produce documents and never did suggests that the discovery responses violate Rule 26(g) and were interposed for an improper purpose of causing Plaintiffs to expect documents and thereby delay a motion to compel while lulling Plaintiffs into the false belief that documents were forthcoming. *Fuqua v. Horizon/CMS Healthcare Corp.*, 199 F.R.D. 200, 203 (N.D. Tex. 2000).

In response to Request No. 30, Defendants' reference to class certification motions does not remove the obligation to provide responsive documents.

IV. **DEFENDANTS MUST REDACTIONS FROM THEIR EEOC PRODUCTION**

Defendants redacted the names of non-party employees from their EEOC file production without producing any privilege log. Defendants must provide underacted copies of the EEOC file they produced and a direction that they should not apply "relevancy" redactions to future discover responses without asserting a recognized privilege and a privilege log.

WHEREFORE, Plaintiffs request that their motion be granted.

           Respectfully submitted,

   /s/ Brian Sanford
Brian Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph: (214) 717-6653
Fax: (214) 919-0113

Samuel O. Maduegbuna, Esq.
*Admitted Pro Hac Vice*
sam.m@mcande.com
William W. Cowles II, Esq.
*Admitted Pro Hac Vice*
wcowles@mcande.com
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiffs
30 Wall Street, 8th Floor
New York, NY 10005
Ph: (212) 232-0155
Fax: (212) 232-0156

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, I served the foregoing document on all counsel of record via the electronic filing system of the Court.

            /s/ Brian P. Sanford