FILED
June 26, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____pg_____
              DEPUTY

**United States District Court**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CLIFFORD MICHEL, GUERDA LOUIS, and RALPH FRÉDÉRIC, § § § § § § § § § § § § § § *Plaintiffs,* vs. WORKRISE TECHNOLOGIES INC., HCS RENEWABLE ENERGY LLC, and ROBERT BURNS, *Defendants.* | Civil Action 1:21-cv-681<br><br>**JURY DEMANDED** |

## PLAINTIFFS' THIRD AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs Clifford Michel, Guerda Louis, and Ralph Frédéric ("Plaintiffs") present their Third Amended Complaint for unlawful discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII").

### I. NATURE OF THIS ACTION

1. In May 2020, Defendants Workrise Technologies Inc., (formerly RigUp, Inc.) ("Workrise") and HCS Renewable Energy, LLC ("HCS") terminated approximately fifty (50) Black and Caribbean solar panel module installers and technicians working in their install sites in Texas because of their race, color, and national origin.

2. Chris Franco, a Construction Manager with Defendants Workrise and HCS, admitted that he was instructed by a Vice President, Defendant Robert Burns,

*Plaintiffs' Third Amended Complaint and Jury Demand*                                       Page 1

to terminate all Black and Caribbean (predominantly Haitian and Jamaican) employees working for Defendants.

3. Defendants falsely told the employees they were being terminated because of a "Reduction of Man Force."

4. In reality, these employees were terminated because of their skin color, race, heritage, and birthplace.

5. The discrimination occurred during a one-time event of mass firing that impacted all Plaintiffs and Black employees in the same way.

6. As a result, Plaintiffs, who worked for Defendants Workrise and HCS, bring this action to redress race, ethnic, and color discrimination in violation of Section 1981 and Title VII.

7. Plaintiffs were unlawfully terminated in May 2020 by Defendants.

8. Black or Caribbean employees of Defendants were subjected to one or more aspects of the systemic race and ethnic discrimination described in this Complaint, including, but not limited to: discriminatory policies and practices; differential treatment; and unlawful termination.

9. Plaintiffs seek declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses.

## II. JURISDICTION AND VENUE

10. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

11. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants Workrise and HCS are subject to personal jurisdiction, reside in Texas, and maintain their principal place of business, in Austin, Texas, and within this District.

12. The Western District of Texas is the most logical forum in which to litigate the claims of the Plaintiffs. Plaintiffs worked at Defendants' Workrise and HCS facility in Tom Green County

13. On May 20, 2020, Michel filed charges of discrimination, retaliation and hostile work environment with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e *et seq*.

14. The EEOC issued a Notice of Right to Sue letter dated and received on August 5, 2021.

15. This action is brought within ninety (90) days of Michel's receipt of the Notice of Right to Sue.

### III. PARTIES

#### A. Plaintiffs

16. Plaintiff Clifford Michel is a citizen of the United States and a resident of New York.

17. Michel is a Black Caribbean Haitian male.

18. Michel was born in Haiti and immigrated to the United States in 2009.

19. At all times material, Michel was employed by Defendants Workrise and HCS as a Module Installer, QA/QC Technician.

20. Plaintiff Guerda Louis is a citizen of the United States and a resident of Florida.

21. Louis is a Black Caribbean Haitian female.

22. At all times material, Louis was employed by Defendants Workrise and HCS as a QA/QC Technician.

23. Plaintiff Ralph Frédéric is a citizen of the United States and a resident of Florida.

24. Frédéric is a Black Caribbean Haitian male.

25. At all times material, Frédéric was employed by Defendants Workrise and HCS as a Module Installer.

**B.     Defendants**

26. Workrise is a foreign corporation and does business in the state of Texas. Workrise may be served by serving its registered agent, Cogency Global Inc., at its registered address, 1601 Elm St., Suite 4360, Dallas, Texas 75201.

27. HCS is a domestic limited liability company and may be served by serving its registered agent, Cogency Global Inc., at its registered address, 1601 Elm St., Suite 4360, Dallas, Texas 75201.

28. Workrise is a workforce management solution for the skilled trades.

29. HCS shares a website with Workrise that states "HCS Renewable is now Workrise." However, it is registered as a separate entity with the Texas Secretary of State.

30. At all times material, Defendant Workrise is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of Texas with Texas Taxpayer ID 32053814961 and Texas Secretary of State ID 0801973532.

31. Workrise has been in business since April 17, 2014.

32. At all times material, Defendant HCS is a domestic business corporation duly existing by the virtue and laws of the State of Texas that does business in the State of Texas with a Texas Taxpayer ID 32061439264 and Texas Secretary of State ID 0802531453.

33. HCS has been in business since August 30, 2016.

34. At all times material, Workrise owns and operates HCS.

35. At all times material, Defendants Workrise and HCS were joint employers of Plaintiffs.

36. At all times material, Defendants Workrise and HCS acted in concert such that they were a "single employer" or a "joint employer" under all applicable federal, state, and local laws.

37. At all times material, Defendants Workrise and HCS employed members of Plaintiffs as Module Installers and QA/QC Technicians.

38. At all times material, Defendant Robert Burns ("BURNS") was the Vice President of Construction for Defendant HCS.

39. BURNS is a white male of non-Caribbean ancestry.

40. BURNS held supervisory authority over Plaintiffs, controlling many of their job duties.

41. BURNS held the power to hire and fire Plaintiffs.

42. At all times material, Chris Franco was the Construction Manager for Defendants Workrise and HCS.

43. Chris Franco is a Hispanic male of non-Caribbean ancestry.

44. Franco held supervisory authority over Plaintiffs, controlling many of their job duties.

45. Franco held the power to hire and fire Plaintiffs.

46. BURNS, Workrise, and HCS are collectively referred to as "Defendants" or "Defendant").

## IV. BACKGROUND FACTS

  a. *Defendants Hire Plaintiffs to Work in Texas in February 2020*

47. In 2019, Michel's friend recommended that he seek work installing solar panels.

48. Defendants hired Michel on or about February 1, 2020 as a Module Installer to work in San Angelo, Texas on the Rambler Solar Project.

49. The Rambler Solar Project covers 1,700 acres with 733,000 solar panels.

50. After he was hired, Michel travelled from his home in New York to work for Defendants in Texas.

51. Defendants hired Louis on or about November 14, 2019, as a Module Installer to work in San Angelo, Texas.

52. After she was hired, Louis travelled from her home in Florida to work for Defendants in Texas.

53. Defendants hired Frédéric in early 2020 as a Module Installer to work in San Angelo, Texas.

54. Defendants hired Plaintiffs through an in-house recruiter named Jean Jamesly Brisseau ("Brisseau").

55. Brisseau is the Administrator and Site Representative for HCS, for Defendants' worksite in San Angelo, Texas.

   b. *Plaintiffs Face Discriminatory Treatment*

56. Plaintiffs initially worked under the supervision of Foreman Philip.

57. Foreman Philip made discriminatory comments on a regular basis like "these fucking Haitians" and "these people are stupid," in reference to workers who were Black, Caribbean, Jamaican, and Haitian like Plaintiffs.

58. Foreman Philip made these comments in front of Michel.

59. Foreman Philip made discriminatory comments in front of Frédéric.

60. Foreman Philip spoke to workers who were Black, Caribbean, Jamaican, and Haitian, like Plaintiffs, in a derogatory and aggressive manner on a regular basis.

61. Foreman Philip also regularly terminated Black employees and drove others away because they feared Foreman Philip would become physically violent.

62. Plaintiffs and other Black employees complained about this unlawful hostile work environment, but Defendants took no appropriate corrective action.

63. On or about January 29, 2020, Black employees went on strike and demanded that Foreman Philips be fired due to his discriminatory and abusive behavior.

64. Defendants claimed they terminated Foreman Philips. But he was brought back as the foreman about a week later only to be allegedly fired a second time by Defendants.

   c. *Plaintiffs are Fired for Unlawful reasons in May 2020*

65. In or around early April 2020, Defendants brought in Chris Franco as a foreman, who is Hispanic and of Mexican ancestry.

66. Franco brought with him approximately 50 Mexican workers.

67. On or about the end of April 2020, Defendants shut down the worksite for COVID testing.

68. On May 11, 2020, Michel emailed and called Defendants to ask why he had not been called back to the Rambler Site despite testing negative for COVID and hearing that the site reopened. Michel received no substantive answer.

69. On May 12, 2020, about four days after the testing results, Defendants called back most White and Hispanic workers while laying off the Haitian, Jamaican and African American and Black workers.

70. On or about May 12, 2020, Michel received a text message from Franco stating:

> Hello this is Chris Franco from HCS, I was instructed to contact you to let you know you have been laid off. Please do not return back to the Rambler Site and contact your recruiter for any questions. Reason why: Reduction of man force. Thank you, Chris Franco.

71. Michel asked Defendants' employee and his recruiter Brisseau, "Why am I being terminated?"

72. Brisseau responded to Michel:

> FRANCO WAS INSTRUCTED BY BURNS TO FIRE ALL OF THE CARIBBEAN AND BLACK PEOPLE AT ALL THE SITES. BECAUSE IT CAME FROM HIGHER UP, THERE IS NOTHING HE COULD DO SO HE HAD TO FIRE YOU.

73. Michel learned that Defendants also terminated approximately 50 other Black, Caribbean, Jamaican, and Haitian employees (including Louis and Frédéric) at or around the same time because of their color, Caribbean race, and Jamaican and/or Haitian national origin.

74. Defendants' reduction in force and terminating all Caribbean, Haitian, and Black workers is a pretext for discrimination on the basis of Plaintiffs' color, race, and ancestry.

75. Defendants retained employees who were not Black.

76. Plaintiffs' last day at work was May 12, 2020.

77. On May 13, 2020, Michel emailed Defendants to complain that his termination was discriminatory since only White and Hispanic workers were allowed back to work while the Black, Haitian and other Caribbean workers were not.

78. On May 14, 2020, Michel again emailed Defendants, including Franco and Brisseau, and two other recruiters, to state that he had hired an attorney given the discriminatory firings of over 50 Haitian and Black employees.

79. On May 15, 2020, an employee from Defendants' Human Resources Department emailed Michel to notify him that they would investigate his complaint.

80. A few hours later that same day, Defendant BURNS sent Michel a LinkedIn connection request to stop a potential lawsuit and avoid liability by attempting to befriend Michel.

81. On or around May 18, 2020, an employment attorney that Michel retained called Defendants about the discriminatory firings.

82. On May 20, 2020, Michel's attorney wrote Defendants about the discriminatory firing and provided an EEOC charge to be filed against Defendants.

83. As a result of Michel's May 13 complaint and retaining an attorney, about two weeks after the firing, BURNS contacted Brisseau, the recruiter, and told him to rehire the 50 Black and Caribbean employees that were just fired from the Rambler Solar Project in San Angelo.

84. By late May and early June 2021, Defendants were attempting to rehire the Black and Caribbean employees.

85. By this time, Michel had returned to his home in New York.

86. Louis and Frédéric never received any notice that they were being rehired despite testing negative for COVID.

87. Approximately fifteen (15) former Black employees returned to work for Defendants, mostly those who lived in Texas, while the other approximately thirty-five (35), including Plaintiffs, did not return because the work environment was discriminatory and hostile.

88. In late July 2020, the Rambler Solar Project went online and began producing electricity.

*d. The Reasons for Plaintiffs' Termination was Pretextual*

89. In or around March 2020, Defendants laid off over 100 employees due to the COVID-19 pandemic as well as falling oil prices. Those employees were in-house administrative and account executive employees. Defendants continued to hire for Module Installers and QA/QC Technicians well after the oil and COVID related layoffs.

90. Furthermore, according to CEO Ying Xuan Yong, Defendants terminated certain employees because "the economic hit in oil and gas [and] … the impacts of the COVID-19 outbreak." Plaintiffs were engaged in a trade that is entirely different and in a completely different energy sector – solar power.

91. Plaintiffs were also tested for COVID-19 and found to be negative.

92. All or substantially all employees outside of Plaintiffs' protected group maintained their employment with Defendants.

93. Defendants discriminated against and terminated Plaintiffs because of their race, color, ethnicity, and national origin.

94. As a result of Defendants' discriminatory and intolerable treatment, Plaintiffs suffered and continue to suffer emotional distress, humiliation, embarrassment, and physical ailments including trouble eating, trouble sleeping, and extreme emotional distress.

95. As a result of Defendants' unlawful and discriminatory actions, Plaintiffs have endured unwarranted financial hardships and irreparable damage to their professional reputation.

96. As a result of the acts and conduct complained of, Plaintiffs have suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensation.

97. Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

98. Plaintiffs further claim aggravation, activation, and/or exacerbation of any preexisting condition.

99. As Defendants' conduct has been malicious, willful, and outrageous, Plaintiffs demand Punitive Damages against all Defendants, jointly and severally.

100. Plaintiffs claim alternatively (in the event Defendants claim that Plaintiffs are Independent Contractors), Plaintiffs make all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

101. Plaintiffs have been subjected to a systemic pattern and practice of race discrimination.

102. Defendants' employment policies, practices, and procedures: (a) penalize employees for exercising the rights afforded to them by Section 1981 and Title VII; (b) subject Black and Caribbean employees to racial hostility in the work environment; and (c) selectively terminate the employment of Black and Caribbean employees.

103. Because of Defendants' systemic pattern and practice of racial discrimination, Plaintiffs have been adversely affected, including the loss of compensation, wages, back pay, and employment benefits.

104. Plaintiffs have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged, and this suit is their only means of securing adequate relief. Plaintiffs are now suffering irreparable injury from Defendants' unlawful policies, practices and procedures as alleged, and will continue to suffer unless those policies, practices and procedures are enjoined by this Court.

### FIRST CAUSE OF ACTION
**(Discrimination in Violation of Section 1981)**

105. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

106. Plaintiffs allege that Defendants discriminated against them by treating them differently from and less preferably than similarly situated non-Black and non-Caribbean employees and subjecting them to disparate terms and conditions of employment, termination, and other forms of discrimination.

107. Defendants' conduct has been disparate, intentional, willful and conducted in callous disregard of the rights of Plaintiffs.

108. By reason of the above, the Plaintiffs are entitled to all legal and equitable remedies available under Section 1981.

## SECOND CAUSE OF ACTION
### (Race and National Origin Discrimination under Title VII)

109. Plaintiffs repeat and reallege each allegation in each numbered paragraph above.

110. Defendants subjected Plaintiffs to differential terms and conditions of employment because of their race and national origin.

111. All the foregoing actions were taken by Defendants to deprive Plaintiffs of employment and other contractual opportunities on account of their race and national origin.

112. Because of Defendants' willful and deliberate actions, and as a proximate cause, Plaintiffs have been denied their right to equal employment opportunity in violation of Title VII.

113. By reason of the above, Plaintiffs are entitled to all legal and equitable remedies available under Title VII.

## JURY DEMAND

114. Plaintiffs request a trial by jury to the extent allowed by law.

**WHEREFORE**, Plaintiffs seek to represent, request the following relief:

B. Declaratory judgment that Defendants' employment policies, practices and/or procedures challenged herein are illegal and violate Section 1981;

C. A permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, race discrimination by Defendants as set forth herein;

D. An Order requiring Defendants implement programs that (i) will provide equal employment opportunities for Black Caribbean employees; (ii) will remedy the effects of the Defendants' past and present unlawful employment policies, practices or procedures; and (iii) will eliminate the continuing effects of the discriminatory practices described.

E. An Order requiring Defendants to implement systems of supervising, assigning, training, transferring, compensating, and promoting Black Caribbean employees in a non-discriminatory manner;

F. An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (B) through (E) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (B) through (E), above;

G. An Order placing or restoring Plaintiffs into those jobs they would now be occupying, but for Defendants' discriminatory policies, practices or procedures;

H. An Order directing Defendants to adjust the wage rates and benefits for Plaintiffs to the level that they would be enjoying but for the Defendants' discriminatory policies, practices and/or procedures;

I. An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Plaintiffs to be determined at trial;

J. Any other appropriate equitable relief to Plaintiffs;

K. An award of compensatory, nominal and punitive damages to Named Plaintiffs to be determined at trial;

L. An award of litigation costs and expenses, including reasonable attorneys' fees, to Plaintiffs;

M. Pre-judgment interest;

N. Such other and further relief as the Court may deem just and proper; and

O. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Dated: June 6, 2023

    Respectfully submitted,

    */s/ Brian Sanford*
    Brian Sanford
    Texas Bar No. 17630700
    bsanford@sanfordfirm.com
    Elizabeth "BB" Sanford
    Texas Bar No. 24100618
    esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph: (214) 717-6653
Fax: (214) 919-0113

**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiffs
30 Wall Street, 8th Floor
New York, NY 10005
(212) 232-0155

**ATTORNEYS FOR PLAINTIFFS**