# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **CLIFFORD MICHEL, GUERDA** | § | |
| **LOUIS, RALPH FREDERIC,** | § | |
| *Plaintiffs* | § | |
| | § | **No.  1-21-CV-00681-DH** |
| **v.** | § | |
| | § | |
| **WORKRISE TECHNOLOGIES** | § | |
| **INC.,  HCS RENEWABLE** | § | |
| **ENERGY LLC, ROBERT BURNS,** | § | |
| *Defendants* | § | |

# ORDER

Before the Court is Defendants Workrise Technologies Inc. and HCS Renewable Energy LLC's (collectively, "Defendants")[1] Motion for Summary Judgment, Dkt. 153. After reviewing the pleadings, the evidence, and the caselaw, the Court orders that the motion be granted.

## I.      BACKGROUND

This case surrounds Defendants' May 2020 termination of 50 Black and Caribbean solar panel module installers and technicians. Defendants are: (1) HCS, a staffing company that provides temporary labor for large solar installation projects around the country; (2) Workrise, which acquired HCS in 2019; and (3) Robert Burns, then Vice President of Construction for HCS. Dkt. 152, at 594; *id.* at 596; *id.* at 200. Due to HCS's work with Haitian "ambassadors," Haitian HCS employees that would recruit manpower for projects, HCS was known in the industry for employing large

---

[1] Defendant Robert Burns was not included in this Motion.

crews comprised primarily of Haitian employees. *Id.* at 511. Because of the translators needed, Haitian employees were often grouped together into single crews. Defendants hired Plaintiffs Clifford Michel, Guerda Louis, and Ralph Frederic in late 2019 to early 2020, all of whom identify as Black and Haitian. Dkt. 73, at 6-7. The plan was for Plaintiffs to work as Module Installers on the Rambler Solar Project in San Angelo, Texas. *Id.* at 6. The Rambler Solar Project covers over 1,700 acres with 733,000 solar panels. *Id.*

Plaintiffs initially worked under the supervision of Foreman Phillip Sirrat. *Id.* at 7. Plaintiffs allege that Sirrat made discriminatory comments on a regular basis, including comments like "these fucking Haitians" and "these people are stupid" in reference to Black, Caribbean, Jamaican, and Haitian employees. *Id.* at 7. Plaintiffs further allege that Sirrat would regularly terminate Black employees and created a hostile work environment. *Id.* at 8. Defendants emphasize that these events are alleged to have occurred months before Plaintiffs were terminated, and that Sirrat was not involved in the decision to terminate Plaintiffs. Dkt. 169-1, at 74.

Around April 2020, as the COVID-19 pandemic swept the nation, Defendants shut down the worksite for COVID testing. Dkt. 73, at 8. Plaintiffs allege that, about four days after the test results came back, Defendants called back most white and Hispanic workers while laying off the Haitian, Jamaican, and Black workers. *Id.* Plaintiffs further allege that an in-house recruiter named Jean Brisseau told Michel via text that the foreman for the Rambler Solar Project was instructed to fire all Caribbean and Black people at all sites. *Id.* at 9. Michel later discovered that

Defendants also terminated 50 other Black, Caribbean, Jamaican, and Haitian employees at or around the same time. *Id.* Plaintiffs allege that 15 Black employees returned to work for Defendants, while the other 35, including Plaintiffs, did not. *Id.* at 11.

Defendants provide a different framing of events. Defendants claim that, following the start of the COVID-19 pandemic, HCS implemented various safety requirements for social distancing, wearing masks, and handwashing. Dkt. 152, at 436; *id.* at 535. During this period, members of the Haitian crew were observed violating the quarantine and isolation orders in place. *Id.* at 5. As a result, the project's subcontractor, Arraycon, requested removal of the crew. *Id.* Defendants also offer evidence that the Haitian crew was the only crew seen breaching COVID protocols. Dkt. 169-1, at 72. Following site-wide testing, it was discovered that most positive cases were concentrated within the Haitian installer crew—the same crew with members found to have broken COVID protocols. *Id.* HCS removed the crew, which included Plaintiffs, from the Rambler site on May 12, 2020, at the direction of Arraycon. Dkt. 152, at 5. HCS immediately worked to get the Haitian workers reassigned to other projects. *Id.* Most of the 50-person Haitian crew that was laid off were re-hired by HCS. *Id.* at 6.

Plaintiffs contend that Defendants' stated reason for the terminations— COVID-19 safety violations—was a pretextual basis for race-based discrimination. Plaintiffs sued Defendants for race and national-origin discrimination under Title VII and for race discrimination under Section 1981.

## II.      LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported

speculation are not competent summary-judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   ANALYSIS

Plaintiffs allege two claims related to the April 2020 terminations. First, Plaintiffs allege a Title VII claim for race and national-origin discrimination. Dkt. 73, at 14. Second, Plaintiffs allege a Section 1981 claim for race discrimination. *Id.* at 13-14. Defendants move for summary judgment on both causes of action. Dkt. 153. The Court will consider each in turn.

### A.   Title VII

"Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment because of race or color." *Grelle v. City of Windcrest*, 539 F. Supp. 3d 657, 664 (W.D. Tex. 2021) (citing 42 U.S.C. § 2000e-2(a)(1)). "Where a plaintiff lacks direct evidence of discrimination, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* governs." *Id.*[2]

---

[2] The Fifth Circuit has adopted a "modified *McDonnell Douglas* approach" in cases where a mixed-motive analysis applies. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332,341 (5th Cir. 2005). For simplicity's sake, the undersigned will nevertheless refer to the analysis as the "*McDonnell Douglas* framework".

1.    Direct Evidence

"[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984). Indeed, the "entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring). "Direct evidence is evidence which, if believed, proves the fact of [intentional discrimination] without inference or presumption." *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994); *see Bilsky v. Kenworth of Jackson, Inc.*, No. 3:05CV69-WHB-AGN, 2006 WL 8454662, at *2 (S.D. Miss. Mar. 17, 2006) (statements by company employee that he could not hire plaintiff because she was a woman constituted direct evidence of discrimination).

Plaintiffs allege that they have direct evidence of discrimination. First, Plaintiffs contend that Defendants' practice of segregating Haitian individuals into crews together violated Section 703(a) of the Civil Rights Act of 1964, which makes it unlawful for employers to limit, segregate, or classify employees in ways that would deprive them of employment opportunities based on their race. 42 U.S.C. § 2000e-2(a)(2). But evidence of discrimination is direct only if it "proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard*

6

*Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Defendants' grouping of Haitian workers together, without more, does not evince a discriminatory motive. Indeed, Defendants proffered a non-discriminatory basis for grouping Haitian individuals in the same crew—that French Creole and Spanish translators were needed for Haitian workers. Dkt. 152, at 534. Accordingly, the mere fact of Haitian employees' being grouped together does not constitute direct evidence.

Next, Plaintiffs argue that a February 1, 2020, email from HCS Manager Bob Schiel constitutes direct evidence of racial discrimination. That email, sent to HCS Vice President Robert Burns, reads:

> Mr. Burns,
>
> We actually almost got to a stopping point today. They didn't have any real estate until the very last minute. But this was with a very low team moral [sic]. I drive thru [sic] the field and see the laziness and the stink eyes looking at me. Jamesly is sitting and bullshitting with them. I've told him more than once to get them moving. I will release 15 of the bad Haitians Monday evening, and the remaining 14 on Tuesday. Yes there was only 29 causing the [reduction in force] yesterday. But when your [sic] standing in a 3ft circle surrounded by people screaming at you in a different language, well, it looks like more. I was going to release some today, but I don't need anymore trouble until I have some more management behind me, and some more workers on board. I WILL WIN THIS WAR this week! Monday Mike should be going through the orientation as well as the new foreman.
>
> Now for the news that really hurts me. I think you and I both know that we should have told them yesterday "You want to work? Get in the vans! You don't want to? Go home!" But since we did not, they currently think they own the field. In fact I've heard from some of the good ones that, that is what they're are [sic] telling each other. They only put up 4900 mods. They could have done that with a smaller crew. The part that really bothers me is that we chose the cheap labor over the devoted employees who will and have done anything you wanted. You told me in a text "Cant have someone not being a team player!" What role did we play in letting them win? Were we a team then? The bad seeds would have been gone and I'd have 7 foreman. As of today's end I will have 2.

7

The Haitian Jospeh and Cherokee Denise feels the same as I do, we gave them (the cheap labor) what they wanted and until Tuesday that's what they'll think. Today is her last day 🙁 So now I've lost a field admin as well. I've got her training a new one today (loyal to the end). This is lack of respect form us to the people loyal to us. Yes Phillip was a friend, who has proved himself, but this isn't about that. We let an asset go for …. cheap labor. You know as well as I he'll find another place. But haven't you been looking for good help you can trust? He goes home while the person whom many of us, Bridgette included, told you not to bring here gets a new promotion to "Baby sitter, doesn't have to produce anything" and another new truck.

I feel a little better voicing this to you. I wanted to do it through email, because I know you have a temper .. as do I .. and you might have hung up on me before I could finish. LOL. But it is with a very heavy heart that I will be leaving HCS next Friday. I'm sorry, I don't feel the team anymore. I know, sometimes its [sic] just business. But someone once said "A happy employee is a productive employee". Right now you have quite a few unhappy employees on the field. I wish you well in your new Rig up venture and you know as I, I'll see you out there in the Solarcoaster world somewhere. Thanks for listening. Bob.

P.S. My phone will be off tonight. I need some quiet time. I will be on site tomorrow and all next week.

Dkt. 170-1, at 32-33.

Plaintiffs contend that the combination of statements such as "stink eye," "I will release 15 of the bad Haitians on Monday evening, and the remaining on Tuesday," "I WILL WIN THIS WAR," and "the cheap labor" is direct evidence of discrimination. But none of these statements "prove[] the fact of discriminatory animus *without inference or presumption*." *Sandstad*, 309 F.3d at 897 (emphasis added). Read in its entirety, the email can be plausibly read as Schiel being concerned with poor attitudes and work performance, not with racial discrimination. Accordingly, the Schiel email is not direct evidence of discrimination and is thus more appropriately viewed through the *McDonnell Douglas* burden-shifting framework.

8

The Court finds that Plaintiffs have presented no direct evidence of discrimination. Accordingly, the Court will next consider the first step of the *McDonnell Douglas* framework.

        2.     Prima Facie Case

Because Plaintiffs have not provided any direct evidence of discrimination, the Court will now consider whether Plaintiffs' claim fails under the *McDonnell Douglas* framework. "At the first stage of the *McDonnell Douglas*[] burden-shifting approach, a plaintiff must establish a prima facie case of race discrimination." *Glover-Dorsey v. Univ. of Tex. Med. Branch at Galveston, Tex.*, 147 F. Supp. 2d 656, 662 (S.D. Tex. 2001). "A prima facie case of employment discrimination requires the plaintiff to prove four elements: (1) that he or she belongs to a protected group; (2) that he or she was qualified for the job at issue; (3) that he[] or she suffered an adverse employment action; and (4) that he or she was replaced by someone outside the protected group, or otherwise subject to a double standard or discriminatory adverse treatment." *Quintana v. ADC Telecomms., Inc.*, No. EP-09-CV-110-KC, 2010 WL 2038302, at *3 (W.D. Tex. May 19, 2010). Defendants concede that Plaintiffs have established a prima facie case. Dkt. 153, at 16. Where a plaintiff "makes out a prima facie case, a presumption of discrimination arises, and the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action." *Glover-Dorsey*, 147 F. Supp. 2d at 662.

3.      Legitimate, Nondiscriminatory Reason

Where "the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action." *Grelle*, 539 F. Supp. 3d at 665 (italics omitted). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "The burden on [defendants] to produce a legitimate nondiscriminatory reason for terminating [a plaintiff] is one of production, not persuasion; it can involve no credibility assessment." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) (quotation omitted); *see Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016) (finding defendant met its burden of production when it produced evidence that it terminated an employee because she had missed deadlines and attempted to conceal that information).

Defendants have presented evidence that their subcontractor, Arraycon, requested that Plaintiffs' crew be removed due to serious concerns regarding COVID and how continued violations of COVID protocols could impact the project. *See, e.g.*, Dkt. 152, at 569-70 (noting that the Haitian crews were observed not social distancing, not adhering to COVID protocols, and not quarantining); *id.* at 570 ("[I]t was our client's decision, the … subcontractor, Arraycon, to make a move and not bring that crew back, let those people go, and bring other people in."). Accordingly, the Court finds that Defendants have met their burden of production in establishing a legitimate, nondiscriminatory reason for terminating Plaintiffs.

4.      Pretext

Where, as here, a defendant has met their burden to provide a legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to "offer sufficient evidence to create a genuine issue of fact that either: (1) a defendant's reason is not true, but is instead a pretext for discrimination, or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another 'motivating factor' is the plaintiff's protected characteristic." *Grimes v. Wal-Mart Stores Tex., LLC*, No. MO-10-CV-067, 2012 WL 12883129, at *3 (W.D. Tex. Feb. 23, 2012), *aff'd sub nom. Grimes v. Wal-Mart Stores Tex., L.L.C.*, 505 F. App'x 376 (5th Cir. 2013). Importantly, a plaintiff "must prove that the proffered reasons are not just pretexts but pretexts for … discrimination." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (emphasis omitted). Put another way, a plaintiff must prove "that the employer's reasons were not the true reason for the employment decision *and* that unlawful discrimination was." *Id.*

a.      Other groups' COVID violations

Plaintiffs first contend that Defendants' stated reason for termination is pretextual because "[t]he Hispanic crew violated more protocols than the Haitian crew." Dkt. 170, at 20. As support, Plaintiffs cite to Plaintiff Clifford Michel's declaration, where he claimed that "[t]he Hispanic crew violated protocols more than the Haitian crew" and that he "personally saw the Hispanic crew members violate COVID protocols more than the Haitian workers." Dkt. 170-1, at 47. Michel also claims that he "personally saw HCS supervisors and Arraycon and Walker employees

see the same problems [he] saw with the Hispanic workers violating protocols much worse than the Haitian workers." *Id.* The Court interprets these statements as alleging a claim of disparate treatment between Haitian and Hispanic employees.

"A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (quotation omitted, cleaned up). "To show discrimination through disparate treatment, a plaintiff must identify comparators and produce evidence that they were similarly situated employees." *Esparza v. Advanced Network Mgmt., Inc.*, No. EP-21-CV-199-KC, 2023 WL 5419810, at *7 (W.D. Tex. Aug. 22, 2023) (quotation omitted, cleaned up). Further, "to show disparate treatment, [a plaintiff] must demonstrate that the misconduct for which she was discharged was *nearly identical* to that engaged in by an employee not within her protected class whom the company retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (quotation omitted, emphasis added, cleaned up). "The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage, is a stringent standard—employees with different responsibilities or different supervisors are not considered to be 'nearly identical.'" *Esparza v. Advanced Network Mgmt., Inc.*, No. EP-21-CV-199-KC, 2023 WL 5419810, at *7 (W.D. Tex. Aug. 22, 2023) (quotation omitted).

Plaintiffs have fallen short of that exacting standard. Nowhere do Plaintiffs explain (1) the identities of the Hispanic employees alleged to have violated COVID

protocols; (2) the job duties of those employees; or (3) the supervisors of those employees. Plaintiffs' evidence, therefore, is insufficient to establish pretext in the context of a disparate-treatment claim. The Fifth Circuit's recent decision in *Owens v. Circassia Pharmaceuticals, Inc.*, is instructive. There, the court held that a plaintiff's claim did not survive summary judgment where plaintiff did "not identify comparators" "outside of vaguely referencing 'white male comparators' or 'her peers'." 33 F.4th 814, 827 (5th Cir. 2022). Nor did plaintiff "produce any evidence whatsoever that these comparators were similarly situated outside of their job titles." *Id.* Plaintiffs here have provided even less information in this case than the plaintiff did in *Owens.* Accordingly, the Court finds that Plaintiffs have failed to demonstrate pretext sufficient to survive a motion for summary judgment.

### b.    Previous discriminatory comments

Plaintiffs next rely on discriminatory comments made before the COVID pandemic to establish pretext. Plaintiffs have provided evidence that HCS Managers Bob Schiel and Phillip Sirrat called Black Haitian workers, including Plaintiffs, "Haitian negros," "Black ass fuckers," and the n-word on a daily basis. Dkt. 170-1, at 46. In response to those offensive comments, several Black and Haitian workers protested via an interpreter. *Id.* at 47. Plaintiffs provide further evidence that Defendants fired six Haitian employees who protested on February 3, 2020, and the remaining Haitian employees on May 12, 2020. *Id.* Plaintiffs contend HCS's racial animus is further corroborated by the February 1, 2020, email from Schiel to Burns, wherein Schiel said that he "will release 15 of the bad Haitians Monday evening, and

the remaining 14 on Tuesday." Dkt 170-1, at 32-33. "[I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000) (quotation omitted, cleaned up).

Schiel and Sirrat's offensive comments cannot establish pretext sufficient to survive a motion for summary judgment. Defendants have provided uncontroverted evidence that Schiel and Sirrat did not have the authority to fire Plaintiffs. For offensive comments to provide sufficient evidence of discrimination, they must be "made by an individual with authority over the employment decision at issue." *Id.* Defendants point to the declaration of Robert Burns, where Burns attests:

> During my deposition, I was questioned about an email from Bob Schiel from several months prior to the layoff of Plaintiffs. That email, the complaints raised in the email, and Mr. Schiel himself played no role in the decision to lay off the Plaintiffs' crew. Bob Schiel was not involved in the decision to remove the Plaintiffs' crew from the jobsite.

> During my deposition, I was questioned about foreman Phillip Sirrat. Mr. Sirrat and any conflicts he had with Plaintiffs or their crew at the Rambler site several months before the May 2020 layoffs played no role in the decision to lay off the Plaintiffs' crew. Mr. Sirrat was not working at the Rambler site in May of 2020 and was not involved in the decision to remove the Plaintiffs' crew from the jobsite.

Dkt. 169-1, at 74. Plaintiffs have provided no evidence that Schiel or Sirrat played any role in Defendants' decision to terminate Plaintiffs. Accordingly, Plaintiffs have failed to create an issue of fact on pretext.

14

c. Failure to follow policies

Finally, Plaintiffs argue that they have established pretext because Defendants failed to follow their own policies: "Defendants did not follow their own policy of investigating complaints of discrimination, making suspicious choices and refusing to complete investigations." Dkt. 170, at 30. But Plaintiffs cite no evidence to support that allegation. *See id.* "It goes without saying that such conclusory, unsupported assertions are insufficient to defeat a motion for summary judgment." *Marshall on Behalf of Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998). Because Plaintiffs fail to explain how Defendants did not follow their own policies, much less cite any evidence supporting those assertions, they have not created an issue of fact sufficient to avoid summary judgment.

To recap, Defendants have provided a legitimate, nondiscriminatory reason for terminating Plaintiffs, and Plaintiffs have failed to demonstrate that that reason is a pretextual basis for discrimination. Accordingly, the Court **ORDERS** that Defendants' Motion for Summary Judgment, Dkt. 153, be **GRANTED** with respect to Plaintiffs' Title VII claims.

## B.     Section 1981

Plaintiffs also allege a claim of race discrimination under Section 1981. Dkt. 73, at 13-14. "Section 1981 discrimination claims supported by circumstantial evidence are examined under the *McDonnell Douglas* burden-shifting framework." *Madison v. Courtney*, 365 F. Supp. 3d 768, 771 (N.D. Tex. 2019). "Under this framework, 'a plaintiff must first establish a *prima facie* case of discrimination.'"

*Odubela v. Exxon Mobil Corp.*, 736 F. App'x 437, 443 (5th Cir. 2018) (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). The Court assumes for the sake of argument that Plaintiffs have established a prima facie case of race discrimination.[3]

As mentioned above, Defendants have provided a nondiscriminatory reason for terminating Plaintiffs—that Plaintiffs were observed violating COVID protocols and that Defendants' subcontractor Arraycon requested removal of the crew. *Supra* at 10-11. Accordingly, the burden shifts to Plaintiffs to "offer sufficient evidence to create a genuine issue of fact that either: (1) a defendant's reason is not true, but is instead a pretext for discrimination, or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another 'motivating factor' is the plaintiff's protected characteristic." *Grimes*, 2012 WL 12883129, at *3.

Plaintiffs have failed to offer sufficient evidence to create a genuine issue of material fact that Defendants' provided reason for terminating Plaintiffs was pretextual. *Supra* at 11-15 (rejecting Plaintiffs' contentions that other groups' COVID protocol violations, Schiel and Sirrat's previous discriminatory comments, and Defendants' alleged failure to follow policies demonstrate pretext). Accordingly, the

---

[3] Defendants urge the Court to find that Plaintiffs have failed to establish a prima facie case. Dkt. 153, at 23. Defendants argue that "[t]he crux of Plaintiffs' claims is that they were discriminated against based on their national origin (Haiti), not race." *Id.*; *see Kathy Nguyen v. Brink's, Inc.*, No. 3:18-CV-00235-N, 2019 WL 130284, at *2 (N.D. Tex. Jan. 8, 2019) (noting that Section 1981 "does not afford protection to claims of discrimination based purely on national origin"). Because Plaintiffs fail to establish pretext, however, there is no need to consider Defendants' argument relating to national-origin discrimination.

Court **ORDERS** that Defendants' Motion for Summary Judgment, Dkt. 153, be **GRANTED** with respect to Plaintiffs' Section 1981 claim.

### C. Evidentiary Objections

Both Plaintiffs and Defendants object to certain evidence relied upon by the other party in briefing. The Court will consider each in turn.

#### 1. Plaintiffs' evidentiary objections

Federal Rule of Evidence 103(a)(1) "requires a party objecting to evidence to state the reasons for the objection with specificity." *Carnegie Techs., LLC v. Triller, Inc.*, No. SA-20-CV-00271-FB, 2021 WL 2322934, at *3 (W.D. Tex. June 7, 2021), *report and recommendation adopted*, No. CV SA-20-CA-0271-FB, 2021 WL 4467615 (W.D. Tex. Aug. 31, 2021), *aff'd sub nom. Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288 (5th Cir. 2022); *Martinez v. Ford Motor Co.*, No. SA:14-CV-376-DAE, 2014 WL 6680521, at *2 (W.D. Tex. Nov. 25, 2014) ("Federal Rule of Evidence 103(a)(1)(B) requires the objecting party to make specific objections and state the specific grounds on which each piece of evidence should be stricken.") (cleaned up); *Patton v. Meridian Sec. Ins. Co.*, 617 F. Supp. 3d 516, 526 (N.D. Tex. 2022) ("Objections lacking specificity do not satisfy the requirements of Rule 103."); *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998) ("A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection.") (internal citations omitted).

Plaintiffs provide a laundry list of evidentiary objections. *See* Dkt. 162. These objections are presented in a 37-page chart which identifies the citation for the

17

objectionable evidence, the objectionable evidence, and a cursory description of the basis for the objection. Below is an example:

| Nickelson Dec. ¶ 4 | HCS has historically employed large solar installer crews from South Florida on its jobsites, who are predominately Haitian. | Conclusory. |
|---|---|---|

Dkt. 162, at 2. These objections "are not in the form of a memorandum containing legal argument," but instead "merely provide[] the Court with a chart with quoted excerpts ... and a bulleted list of objections with citations to various rules of evidence." *Carnegie*, 2021 WL 2322934, at *3. Further, Plaintiffs' "chart lacks any explanation as to how the cited rule of evidence applies to the [evidence], and the logical connection between the two is far from clear in most instances." *Id.*

Other courts within the Fifth Circuit have held that boilerplate objections like Plaintiffs', virtually devoid of any law or analysis, should be overruled as a whole. *See, e.g.*, *Carnegie*, 2021 WL 2322934, at *5 ("The Court will overrule all of Triller's other objections for failure to state them with the specificity required under the Federal Rules of Evidence."); *Martinez*, 2014 WL 6680521, at *2 ("The Court finds that Plaintiff's objection is not specific enough to pass muster under Federal Rule of Evidence 103(a)(1)(B). Plaintiff does not tell the Court which parts of the Affidavit she finds overly conclusory; a broad statement that 'said affidavit is conclusory' does not fully apprise the Court of the grounds for the objection. Thus, the Court overrules this objection."). Other courts have held similarly. *See, e.g.*, *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) ("The defendants' one-word objections for 'foundation' fell well short of providing Plaintiff with notice of the specific ground of

18

objection and, consequently, what could be done to cure any defects. Accordingly, these objections also provided no basis for excluding the evidence.").

Because Plaintiffs failed to include any explanation or legal reasoning with their evidentiary objections, the Court overrules them.

### 2.   Defendants' evidentiary objections

Defendants object to several pieces of evidence used in Plaintiffs' response to Defendants' Motion for Summary Judgment. Dkt. 177. However, the Court did not rely on any of the evidence to which Defendant objects in making its ruling. *See Detgen ex rel. Detgen v. Janek*, 945 F. Supp. 2d 746, 753 (N.D. Tex. 2013), *aff'd*, 752 F.3d 627 (5th Cir. 2014) ("Because the court did not find it necessary to rely on this evidence in support of its decision, these objections are overruled as moot."). Accordingly, the Court will overrule those objections as moot.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, Dkt. 153, is **GRANTED**.

SIGNED June 11, 2024.

DUSTIN M. HOWELL

UNITED STATES MAGISTRATE JUDGE

19